Filed 8/26/15  P. v. Bustamante CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RONALD RENE BUSTAMANTE,<br><br>    Defendant and Appellant. | 2d Crim. No. B258313<br>(Super. Ct. No. 2014005362)<br>(Ventura County) |

Ronald Rene Bustamante appeals a judgment following his conviction of possession of a controlled substance--methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and resisting, obstructing and delaying a peace officer (Pen. Code, §148, subd. (a)(1)).  We conclude, among other things, that 1) substantial evidence supports the finding that Bustamante knowingly possessed a usable amount of methamphetamine, and 2) the trial court did not abuse its discretion by granting the People's motion to exclude evidence about the purity and effect of the controlled substance.  We affirm.

FACTS

On the afternoon of February 19, 2014, Police Officers Brandon Ordelheide and Garrett Knowles were on patrol.  They received a radio dispatch call that a "suspicious" person had knocked "on the front door to a residence and [was] pacing back and forth in front of the residence."

Ordelheide drove down an alley and spotted Bustamante in a "trash container area." He got out of the patrol car and tried to speak to Bustamante. Bustamante ignored him and placed his hands inside a trash can. Ordelheide called for "backup."

Ordelheide and Knowles approached Bustamante, and Bustamante walked towards the officers with a glass bottle in his hand. He continued to walk towards the officers despite being ordered to stop. Ordelheide then "screamed at him to stop and get down on the ground." Bustamante complied, but he then resisted the officers' attempt to place him in handcuffs. He continued to resist, until Ordelheide warned him that "he would be tased at which point he stopped" and was handcuffed.

Knowles searched Bustamante and "removed a syringe from his left pocket." Ordelheide testified that "[t]he tip of the syringe appeared to be ground[ed] off so there was no needle and no cap." He believed the substance in the syringe was methamphetamine. Ordelheide testified "the amount of liquid in the syringe [was] a usable quantity," and was consistent with the amount drug users inject "in their body."

Maria Perez, a sheriff's department "forensic scientist," testified that she tested the liquid in the syringe and it "contained methamphetamine." Knowles testified that Bustamante had "recent track marks" on his body.

Bustamante did not testify and he called no witnesses.

DISCUSSION

*Substantial Evidence*

Bustamante contends there is insufficient evidence to support a finding that he knowingly possessed a usable quantity of methamphetamine. We disagree.

In deciding the sufficiency of the evidence, we must draw all reasonable inferences from the record in favor of the judgment. We do not weigh the evidence or resolve conflicts in the testimony. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) We do not decide the credibility of the witnesses. These are matters exclusively within the domain of the trier of fact. (*Ibid*.; *People v. Scott* (1978) 21 Cal.3d 284, 296-297.)

2

To obtain a conviction of the crime of possession of a controlled substance, the People must prove the defendant 1) possessed a usable amount of a controlled substance, and 2) had "knowledge of" its presence. (*People v. Rubacalba* (1993) 6 Cal.4th 62, 64.) A defendant may not be convicted when the "substance possessed simply cannot be used." (*Id*. at p. 66.) Convictions for possession have been sustained where the amounts of narcotics possessed were "in minute quantities." (*People v. Karmelich* (1979) 92 Cal.App.3d 452, 456.)

Bustamante possessed a syringe containing a usable amount of a controlled substance. Perez tested the liquid in the syringe and testified it "contained methamphetamine." She said "the total volume of the substance in the syringe" was "approximately .04 milliliters." Ordelheide testified the amount of liquid in the syringe was consistent with the amount drug users inject "into their body."

Bustamante notes the needle on the syringe was "broken off." Knowles was asked, "[H]ow would a subject consume the substance in the syringe if there's no needle?" He answered, "There's a lot of different ways a subject can do it." A user could take the substance "through the nose, nasally. They can do it through their mouth, orally," or they "can use another needle to withdraw the substance." He said these were "common" methods.

The evidence also shows that Bustamante knowingly possessed the methamphetamine. "An essential element of the crime of possession of narcotics is knowledge of the narcotic character of the article possessed . . . and evidence of prior use of narcotics and presence of needle marks is admissible for such purpose." (*People v. Hancock* (1957) 156 Cal.App.2d 305, 312.) Knowles testified Bustamante had "recent track marks" on his body. He said such marks indicate a person is injecting himself with narcotics.

The evidence also shows that Bustamante was conscious of his guilt. He did not comply with the police officers' orders and evaded Ordelheide's efforts to talk with him. Evidence of knowing possession of narcotics is also shown where the defendant concealed the controlled substance in his clothing. (*People v. Martin* (2008)

3

169 Cal.App.4th 822, 826.)  Police recovered the syringe from Bustamante's "left pocket."  (*People v. Martinez* (1959) 169 Cal.App.2d 242, 245 ["The undisputed fact that the narcotics were found in the pocket of appellant's robe justified the inference that appellant had knowledge of their presence despite his protestations of innocence"].)  The evidence is sufficient.

*Granting the People's Motion to Exclude Evidence*

The People filed a motion in limine to exclude evidence about "the purity" of the controlled substance and the "amount needed to 'get high.'"  The trial court granted the motion.  It ruled it would exclude evidence "pertaining to narcotic effect and quantitation."  The court said, "[I]f it is a usable quantity and it contains contraband, that is enough, assuming the People can otherwise prove knowledge . . . that the defendant knew it contained a controlled substance."

Bustamante contends this ruling:  1) "lightened the People's burden of proof in this case as to both elements of knowledge and usable quantity," and 2) contravened "appellant's due process rights under the Fourteenth Amendment."  The trial court's ruling is consistent with the California Supreme Court decision in *People v. Rubacalba*, *supra*, 6 Cal.4th at pages 65-66.

In *Rubacalba*, our Supreme Court held, "There is no requirement that any particular purity or potential narcotic effect be proven."  (*People v. Rubacalba*, *supra*, 6 Cal.4th at p. 65.)  The trial court both cited and relied on *Rubacalba* in making its ruling.

Bustamante contends the trial court's ruling is not consistent with an earlier California Supreme Court decision, *People v. Leal* (1966) 64 Cal.2d 504.  In *Leal*, the court reversed a conviction for possession of heroin.  It said, "Since in the present case the prosecution proved no more than defendant's possession of traces of narcotics and did not show that such residue was usable for sale or consumption, we remit it to the trial court for the purpose of ascertaining whether or not such factual elements were present."  (*Id.* at p. 512.)

In *Rubacalba*, our Supreme Court re-examined *Leal*.  It said, "[T]he *Leal* usable-quantity rule prohibits conviction *only* when the substance possessed simply

4

cannot be used, such as when it is a blackened residue or a useless trace. It does not extend to a substance containing contraband, even if not pure, if the substance is in a form and quantity that can be used." (*People v. Rubacalba*, *supra*, 6 Cal.4th at p. 66, italics added.)  "The chemical analysis of the material possessed need only establish the existence of a controlled substance." (*Id*., at p. 65.)  Here Perez's testimony showed the existence of a controlled substance.  Ordelheide's and Knowles's testimony showed there was a usable amount.

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

5

Nancy Ayers, Judge

Superior Court County of Ventura

_____

Linda L. Currey, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.